# PRENUPTIAL AGREEMENT

THIS AGREEMENT, made and executed on this 30 day of May, 2013 between **JAMES B. RUBENSTEIN** residing at 9 Egbert Avenue, Morristown, New Jersey, (hereinafter referred to as "James"), and **BESS WITLIN**, residing at 9 Egbert Avenue, Morristown, New Jersey (hereinafter referred to as "Bess").

## WITNESSETH:

WHEREAS, said parties have represented to each other that they are legally free to marry and, therefore, contemplate marriage to each other, such marriage to be solemnized on June 22, 2013; and

WHEREAS, in anticipation of said marriage, the parties desire to fix, establish and determine the rights which shall accrue to each of them in the other's estate in the event of the death of either of the parties, and to fix, establish and determine the rights of the parties in the event of an annulment, separation, or dissolution of the marriage, including, but not limited to, the rights of the parties to support, alimony and equitable distribution, pursuant to N.J.S.A. 2A:34-23, and N.J.S.A. 37:2-31 *et seq.*, community property or any other rights which the parties may acquire through the course of the marriage by statue and/or decision of law in this State of any other jurisdiction, now or in the future; and

WHEREAS, the parties desire to fix, establish and determine the interests, rights and claims that will accrue to each of them in the Separate Property (as defined herein) and the estate of the other (with respect to such Separate Property) by reason of their marriage to each other, and they accept the provisions of this Agreement in lieu and in full discharge, settlement and satisfaction of any and all interests, rights and claims that otherwise each might or could have, under applicable law, in and to the Separate Property and estate (with respect to such Separate Property) of the other, both before and after the other's death; and

WHEREAS, James has property, investments, assets and obligations as are more particularly set forth in the Schedule " A " annexed hereto and made a part hereof; and

WHEREAS, Bess has property, investments, assets and obligations as are more particularly set forth in the Schedule " B " annexed hereto and made a part hereof; and

WHEREAS, each of the parties is currently employed and in good health, and each expects to remain so and each has income and earnings as set forth in said schedules; and

WHEREAS, the parties accept the provisions of this Agreement in lieu of any other rights either may have, in law or equity, and in full discharge and satisfaction of such rights; and

WHEREAS, each party enters into this Agreement with the full knowledge of the income, earnings, financial obligations and the extent and present value of all the property and estate of the other, and having had a reasonable opportunity to ascertain same or having declined to examine and investigate, each party has thereby waived and does hereby waive and relinquish the right to do so, and of all the rights and privileges in and to such property and estate which would be conferred by law upon each in the property and estate of the other by virtue of the consummation of the proposed marriage, if this Agreement were not entered into; and

WHEREAS, each party has had the opportunity to obtain independent legal advice prior to the execution of this Agreement. Bess has been represented by Jeffrey K. Epstein, Esquire, of the firm of Szaferman, Lakind, Blumstein & Blader, P.C. and James has been represented by Steven R. Rubenstein, Esquire of the firm of Rubenstein, Meyerson, Fox, Mancinelli & Conte, P.A.; and

WHEREAS, each party has been fully advised as to his or her rights hereunder and in such absence of such an Agreement, and with full knowledge of such rights, each is fully satisfied to enter into this Agreement; and

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, the parties hereby agree as follows:

## GENERAL STATEMENT OF INTENTION

1. It is the intention of the parties in entering into this Agreement that, when the marriage ends by divorce, annulment, separation or death, their rights shall be fixed in advance. It is also their intention to fix and determine the rights, claims and interests which each of them has in the Separate Property and the estate of the other in the event of one party's death. It is their intention to avoid litigation and intrusion into their professional and personal lives and the lives of their families and business associates which would perhaps otherwise occur if this Agreement had not been entered into. Both parties recognize that they are waiving rights that they might have had this Agreement not been entered into. They are relinquishing these rights knowingly and voluntarily but, in doing so, warrant and represent that the Agreement is fair and reasonable to each of them.

2. Each party acknowledges that he/she has had the opportunity to ascertain, and has been informed by a full and frank disclosure made by the other and is fully acquainted with and aware of all the income, earnings, property, net worth and financial obligations of the other; that each waives his/her right to further investigate the income, earnings, property, net worth and financial obligations of the other and is relying upon the disclosures made herein; and that each has ascertained and weighed all the facts, conditions and circumstances likely to influence

his/her judgment in all matters embodied herein; and that each has given due consideration to all such matters and questions and clearly understands and consents to all the provisions hereof; and that each has had the benefit of the advice of his/her counsel of his/her own choice and is willing to accept the provisions of this Agreement in lieu of all other rights which he/she may have as a result of the marriage.

3. Bess acknowledges and represents that her assets, property, investments, obligations and income and earnings are as set forth in Schedule "B". James acknowledges and represents that his assets, property, investments, obligations and income and earnings are as set forth in Schedule "A".

## MARITAL PROPERTY

4. It is the intention of the parties to have limited marital property acquired by them during the marriage. The parties contemplate that marital property shall be limited to the property acquired in joint names, gifts given to them in honor of their marriage and assets acquired by the parties during their marriage with income that is earned by them during the marriage. In addition, any property within the home that is purchased after the marriage and the automobiles purchased by by either party during the marriage shall be considered as marital assets. All the other property shall be deemed the sole and separate property of either James or Bess.

5. The parties contemplate that, in the future, they may purchase property, including but not limited to a residence to replace the home at 9 Egbert Avenue, Morristown, New Jersey (hereinafter, the residence), which is now owned by James and in which the parties intend to reside immediately after their marriage. It is understood and agreed between the parties that any contribution towards the purchase of an asset during the marriage, including a residence to replace 9 Egbert Avenue, which is placed into joint names shall be considered to be joint property, with the exception that any contribution made towards the purchase of said asset from the separately held pre-marital funds of either party shall continue to retain its identity as separate property. To the extent that separate funds from either party are utilized, the asset that has been acquired shall be deemed by the parties to be a hybrid property. By way of illustration, if the parties purchase a home to which both parties contribute all or a portion of the net proceeds realized from the sale of the residence, or other of his/her separate funds, it is agreed and understood that James, or Bess, as applicable, would receive back his/her initial contribution and the equity remaining in the property would be considered joint property in the event of a termination of the marriage as hereinafter described.

## SEPARATE PROPERTY

6. The following shall constitute and remain the separate property of the respective parties:

a. Property acquired by a party before the contemplated marriage or property acquired at any time by bequest, devise, descent or by gift from a person other than the other party to this Agreement; the increase in value to such property whether or not such appreciation is due in whole or in part to the active efforts of either of the parties to this Agreement; property acquired in exchange for such property the proceeds of sale thereof and property acquired with such proceeds or with other separate property;

b. Compensation for personal injuries;

c. That portion of retirement or pension benefits acquired prior to the marriage, or proceeds of insurance policies received from any sources; dividends, interest or other income derived from or other distributions upon separate property, property designated as separate property in this Agreement, and all other income of all kinds and from all sources, except income from joint property, if any.

7. It is agreed and understood between the parties that all separate property whether acquired prior to or during the marriage, regardless of the source of the money or property to purchase, finance or acquire same, together with any property into which same is hereafter converted, any income thereon, or any increments, accretions or increases in value thereof, whether due to changes in economic conditions or due directly or indirectly to the services, skills or efforts of either of the parties, shall be deemed the sole and separate property of the party in whose name it was acquired.

8. Each party shall, during his/her lifetime, keep and retain sole ownership, enjoyment, control and power of disposal of (a) all property of every kind and nature whatsoever now owned, and all increments thereto, whether such increment is passive or active, and (b) all property acquired by such party with the proceeds of the property identified in (a) and by gift or inheritance, and all increments thereto, whether passive or active. The property identified in (a) or (b) of this paragraph (hereinafter referred to as "Separate Property") shall be free of any interests, rights or claims of the other (including rights under any community property laws). Each party irrevocably authorizes the other to act as his/her attorney in fact to join in making, executing, acknowledging and delivering any deed, conveyance, transfer or assignment of the Separate Property of such other party so that thereby the joinder, if necessary, may be made freely and without restraint. Each party shall, upon request of the other, make, execute, acknowledge and deliver to the other any and all instruments necessary or appropriate to carry into effect the purpose and intent of this Agreement.

## INTERSPOUSAL AND OTHER GIFTS

9. It is agreed and understood between the parties that any gifts that James and Bess may give to each other shall be their sole and separate property and shall not be subject to equitable distribution in the event of a divorce.

# RIGHTS UPON DIVORCE

10. James has assets that are more specifically reflected on *Schedule A* of this Agreement. It is possible that during the marriage James may earn income which will accumulate and add to his net worth. It is specifically agreed and understood between the parties that any incremental increase in the value of James' assets as well as any assets accumulated by him during the marriage, shall be his sole and exclusive property and shall not be subject to equitable distribution in the event of a divorce between the parties.

11. Bess has assets that are more specifically reflected on *Schedule B* of this Agreement. It is possible that during the marriage Bess may earn income which will accumulate and add to her net worth. It is specifically agreed and understood between the parties that any incremental increase in the value of Bess' assets as well as any assets accumulated by her during the marriage, shall be her sole and exclusive property and shall not be subject to equitable distribution in the event of a divorce between the parties.

12. *Duration and Termination of Marriage.* The duration of the marriage shall be defined to mean the period from the date that a marriage ceremony takes place until the occurrence of the first of the following events:

a. The filing of a Complaint for Divorce or Annulment or Separate Maintenance;

b. The execution of a Separation or Property Settlement Agreement;

c. The residence of the parties in separate dwellings for a period of ninety (90) days or longer;

d. Either party's intention to remain apart, after thirty (30) days of separation, with written notice to the other party.

The marriage shall be deemed to have terminated for the purposes of this Agreement upon the happening of the first of any of the events set forth above.

13. In the event the marriage is terminated, as hereinabove provided, the parties agree that the division of their property shall be as follows:

a. Any property acquired by the parties individually, prior to the marriage, shall continue to remain the separate and independent property of that party and shall not be subject to division in any dissolution proceedings including but not limited to any additions thereto or accumulated interest or accretions thereon; and

b. Any property acquired during the marriage by the parties, or either of

them, as a marital asset, as hereinabove provided, shall be divided be in proportion to their respective contribution to the acquisition of such assets; and

c. James is a participant in several retirement plans as a result of his employment with the Morris Imaging Associates. James will retain his premarital interest in the Morris Imaging Defined Benefits plan (pension) free of any claim of or contribution to Bess. Bess hereby waives any claim to any interest in the Morris Imaging Defined Benefits plan which was acquired by James prior to the marriage. Bess shall receive 50% of the retirement benefit of the of the pension acquired during the marriage as calculated by use of a coverture fraction as provided hereinafter in paragraph 15 of this Agreement. If he can do so, James will arrange to segregate the premarital portion of the pension from the post marriage contributions; and

d. To the extent James has an interest in other retirement plan(s), Bess will have no claim to the value of any such plans as they existed on the date of the marriage, together with any passive appreciation which may increase the value of said plan(s); and

e. To the extent that James contributes to any of the aforesaid retirement plans subsequent to the marriage, as hereinabove provided, the value of the contributions made during the marriage shall be subject to and divided in accordance with the laws of the state in which the dissolution proceedings take place or, in the alternative, in such manner as the parties shall agree; and

f. James has an interest in the Morris Imaging Associates which was more specifically defined on the Schedule A which is attached hereto. It is specifically agreed and understood between the parties that any incremental increase in the value of James's interest in Morris Imaging Associates, whether accumulated by passive or active appreciation, shall continue to be his sole and exclusive property and shall not be subject to equitable distribution in the event of a divorce between the parties.

14. In the event the marriage is terminated, as hereinabove provided, James agrees that he will pay Bess limited duration alimony in the amount of $50,000 per year of marriage to a maximum of $450,000 (e.g., if the marriage lasts 8 years, the alimony will be equal to $400,000. If the marriage lasts 10 or more years, the alimony will not exceed 9 years or $450,000). If James has become involuntarily retired before his 66th birthday, his obligation to pay alimony to Bess, as aforesaid, shall be limited to $50,000 for each year of the marriage to a maximum of $300,000.

15. James has one or more retirement accounts, including but not limited to 401k plans, a defined benefit pension and annuities, which he acquired prior to the contemplated marriage. Bess acknowledges that she has no claim to the value of the defined contribution plans (401k, I.R.A, annuity, etc) which existed on the date of the parties' marriage. James agrees that, to the extent possible, he will segregate the pre-marital portion of the defined contribution plans, which will remain his separate property. If he is unable to do so, to the extent contributions are

made to the defined contribution plans by James during the marriage, both parties agree that those post marriage contributions will be subject to distribution if the marriage is terminated by divorce. Bess shall also receive 50% of the retirement benefit of the defined benefit plan acquired during the marriage as calculated by use of a "coverture fraction", i.e. the number of years of the marriage divided by the number of years that James has participated in the plan to the date of his retirement. The resulting fraction shall be divided by 2 and that shall determine Bess's interest in the defined contribution plan benefits which she will receive.

## RIGHTS UPON DEATH

16. Except as herein provided, the parties do hereby mutually waive, discharge and release any right, title or interest whatsoever that they may acquire under the statues or common-law now or hereafter in effect in any jurisdiction in the property or estate of the other at any time hereafter by reason of their marriage including, but not limited to:

a. To share in the estate of the other party, whether by way of dower, curtesy, widow's allowance, statutory allowance, or distribution in testacy;

b. To elect to take against any Last Will and Testament or Codicil of the other party under N.J.S.A. 3B:8-1 et. seq. or the same or similar law of any other jurisdiction; and

c. To act as executor or administrator of the other party's estate.

This provision shall serve as a mutual waiver of the right of election in accordance with the requirements of N.J.S.A. 3B:8-1 et. seq.

17. Within 90 days of the date of their marriage, James agrees to prepare and maintain a Last Will and Testament which will provide that, in the event James predeceases Bess and an event of marital termination, as hereinabove provided, has not occurred prior thereto, he will devise an amount which is not less than 33.33% of his augmented estate to Bess which shall include the residence in which the parties are residing at the time of James's death. If the value of James's interest in the home exceeds an amount which would be equal to 33.33% of James's augmented estate, Bess shall receive James's interest in the home as her share of his estate without obligation to repay any amount in excess of 33.33% of James's augmented estate. However, Notwithstanding the foregoing, and in addition thereto, James agrees to name Bess as a one-third beneficiary of his Defined Contribution and Defined Benefit Retirement plans. It is understood and agreed that, for purposes of determining Bess's share of James's augmented estate, the total amount of his retirement plans shall not be included in the calculation.

18. In the event Bess predeceases James, James agrees to pay her daughter, Arielle for Bess's share of the residence, as defined in paragraph 5, above as follows:

a. James shall pay Arielle 50% of the amount determined to be Bess's interest in the property in three equal annual installments commencing 180 days (6 months) after Bess's death; and

b. The remaining 50% due Arielle shall be paid upon the sale of the residence or if James ceases to reside in it, or upon his death, whichever sooner occurs.

19. Upon the death of either party to this agreement, and except as hereinabove provided, the other party does hereby agree to reject, forfeit, relinquish, and waive any statutory or intestate interest, or other right or interest, which would otherwise be conferred on or vested in him or her (whether in community property or otherwise) with respect to any property, real or personal, now owned or hereafter acquired by the other party, and hereby does release the decedent and his or her estate from any and all intestate interest or distributive share which the survivor might otherwise become entitled to receive (whether in community property or otherwise) upon the death of the decedent. Each party will execute any and all documents necessary from time to time to carry out the waivers contained herein.

20. The waiver of the right to elect to take as against any Last Will and Testament herein contemplated shall apply to any Last Will and Testament heretofore or hereafter made by the other party and to present or after acquired property, regardless of the last domicile of the deceased party.

21. The parties agree that they shall be bound by the terms of this agreement in the event of the death of the other, and they further agree to waive and relinquish and release any and all other rights which they may have otherwise acquired by reason of their marriage, in any property owned by the other or by the other's estate upon his or her death. The parties further agree to refrain from any action or proceeding which may tend to void or nullify, to any extent or in any particular, the terms of any Last Will and Testament or of any trust or testamentary substitute created by the other party and they further agree that they will not contest or oppose the probate of any Last Will and Testament executed by each other, to the extent that it is not inconsistent with the promises and terms of this agreement.

22. Within 30 days of the marriage, Bess agrees to sign a waiver of any death benefit to which she might otherwise be entitled from any or all of James's retirement plans.

23. Nothing in this Agreement shall effect the right of either party to devise or bequeath property to the other as he or she may wish, and nothing in this Agreement shall be construed as a waiver or renunciation of the right of either party to receive a bequest under the Last Will and Testament of the other if a specific bequest is made therein.

## OTHER PROVISIONS

24. Neither part has made any representations to the other concerning his or her personal or financial status which are not set forth in this Agreement. Neither party has made

any promise to the other, express or implied which is not set forth in this Agreement.

25. Upon entering into the marriage and at all times hereafter, each of the parties shall separately have and retain all rights in his or her respective existing and future separate property and each of them shall have the absolute and unrestricted right to dispose of such separate property, free from any claim that may be made by the other by reason of the marriage and with the same effect as if no marriage had been consummated between them, notwithstanding any law of equitable distribution or community property which otherwise might be applicable.

26. There is attached to this Agreement as *Schedule A*, a listing of all of the assets and liabilities of James with their values. There is attached to this Agreement as *Schedule B*, a listing of all of the assets and liabilities of Bess with their values. These Schedules are attached to the Agreement so as to fully demonstrate that the parties have entered into this Agreement with a clear understanding of the assets and net worth and potential income and net worth of each other. The parties accept Schedules A and B as a full listing of assets and values owned by them at the time of the marriage.

27. Each party (or his or her legal representative), shall, upon the request of the other, execute, acknowledge and deliver any additional instruments that may be reasonably required to carry the intention of this Agreement into effect, including such instruments as may be required by the laws of any jurisdiction now or hereafter in effect which may affect the property rights of the parties as between themselves or with others. The intentions of this paragraph shall survive any termination of the marriage between the parties and the parties shall be required to execute any documents in that circumstance. The parties further agree that this paragraph should survive any incapacity of the other party so the full and complete intentions of this Agreement may be carried into effect.

28. This Agreement shall become effective upon the marriage of the parties and shall bind the parties and the respective heirs, executors and administrators.

29. Each of the parties hereby waives and releases all rights to a trial in any suit, action or proceeding in any court and in any jurisdiction for the determination of any dispute or controversy arising under or out of this Agreement or concerning this Agreement, or for the enforcement of any of the provisions thereof.

30. Any bequest made by one party to this Agreement to the other party in a Last Will and Testament preceding a termination of the marriage by divorce only, previously defined herein, shall be deemed null and void and revoked and renounced and, upon the death of either party, the survivor, at the written request of the decedent's legal representative, shall promptly execute, deliver and file whatever documents are required to effectuate said renunciations.

31. This Agreement cannot be changed or terminated orally. No waiver of any provision of this Agreement shall be valid unless in writing signed by both parties. No waiver of

a breach of or default under any provision of this Agreement shall be deemed a waiver of such provision or of any subsequent breach or default of any kind. No delay or omission to exercise any right or power accruing upon any breach or default shall impair such right or power or to be construed to be a waiver of any such breach or default or an acquiescence therein.

32. This instrument contains the entire understanding and agreement of the parties. All prior conversations, communications, representations, correspondence and other writings are merged into this instrument, which, alone, sets forth the understanding and agreement of the parties.

33. This Agreement is being executed and entered into in the State of New Jersey. This Agreement shall be construed in accordance with and shall, in all respects, be governed by the laws of New Jersey, now and hereafter in effect.

34. James and Bess hereby declare that each has independent legal advice by counsel of his or her own choosing, relative to the negotiation and preparation of this Agreement. James has had the counsel of Steven R. Rubenstein, Esquire of the law firm of Rubenstein, Meyerson, Fox, Mancinelli & Conte, P.A. Bess has had the counsel of Jeffrey K. Epstein, Esquire, of the firm of Szaferman, Lakind, Blumstein & Blader, P.C. The parties acknowledge to each other that they have entered into this Agreement freely and voluntarily and that no one has caused them to enter into this Agreement through coercion, force, pressure, or undue influence. The parties acknowledge to each other that they believe the Agreement to be a fair, just and equitable resolution of the outstanding issues between them and they are satisfied with its terms.

35. In the event that any provision shall be held illegal, unenforceable or in conflict with the laws of New Jersey, such provision shall be deemed separable from the other parts hereof and all of the other provisions shall continue in full force and effect. It is further agreed and understood between the parties that they intend to be bound by whatever existing statute and case law is in effect at the time of the signing of this Agreement and they do not wish to be bound by any retroactive application of future judicial decisions or amendment to any existing statute.

**IN WITNESS WHEREOF**, the parties have set their hands and seals the day and year written below their respective names

WITNESS:

_____
as to James B. Rubenstein

James B. Rubenstein

|                                          | DATED: 5/30/13                    |
| ---------------------------------------- | --------------------------------- |
| _____/s/ Ruth_____                   |                                   |
| as to Bess Witlin                        | Bess Witlin                       |
|                                          | DATED: 5/30/13                    |

STATE OF NEW JERSEY:   NJ
                                  SS:
COUNTY OF   Morris

    **BE IT REMEMBERED**, that on this   3 0   day of   May   , 2013, before me the subscriber, personally appeared James B. Rubenstein who, I am satisfied, is the person named in the within Agreement, and thereupon he acknowledged that he signed, sealed and delivered the same as his act and deed for the uses and purposes therein express.

_____/s/ Ranjit Hundal_____

RANJIT KAUR HUNDAL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Jan. 3, 2016

STATE OF NEW JERSEY: /
SS:
COUNTY OF Morris

**BE IT REMEMBERED,** that on this _30_ day of _May_, 2013, before me the subscriber, personally appeared Bess Witlin, who, I am satisfied, is the person named in the within Agreement, and thereupon she acknowledged that she signed, sealed and delivered the same as his act and deed for the uses and purposes therein express.

_____ Ranjit Hundal _____

RANJIT KAUR HUNDAL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires Jan. 3, 2016

James B. Rubenstein / Assets May 2013

| NAME | TYPE | SHARES/VALUE | AS OF | ACCT # |
|---|---|---|---|---|
| Interstate Ventures | Real estate limited partnership | ~$12,500 | 5/1/13 | |
| Merrill Lynch | HSA | $65,372 | 4/30/13 | 3181 |
| TDA MPPP | Retirement | $77,958 | 4/30/13 | 1120 |
| TDA IRA | Retirement | $93,632 | 4/30/13 | 6500 |
| TDA MIA Pension | Retirement | $979,380 | 4/30/13 | |
| MIA DB Plan - Schwalb | Retirement | Est ~ $700,000 | 7/1/13 | |
| TD Ameritrade | Brokerage | $1,988,181 | 4/30/13 | 1140 |
| Fidelity | Annuity | $733,354 | 3/31/13 | 8760 |
| ATT | Stock | 62/$2,196 | 2/1/13 | 8998 |
| Verizon | Stock | 2,215/$118,543 | 5/1/13 | 0728 |
| PSEG | Stock | 1,734/ $59,532 | 3/28/13 | 3575 |
| Frontier | Stock | 588 / $2,348 | 4/1/13 | 8531 |
| Chase | Savings | $161,449 | 5/14/13 | 1389 |
| Chase | Checking | $229 | 5/14/13 | 8169 |
| Wells Fargo | Savings | $351,113 | 5/14/13 | 5391 |
| Union Center | Checking | $230,186 | 4/18/13 | 8990 |
| Union Center | Checking | $145,876 | 4/16/13 | 3096 |
| Union Center | Jana Checking | $37 | 4/18/13 | 3725 |
| HOUSE & Mortgage | Mortgage | $4,004/mo x ~8 yrs | House ? value | |
| MRA Office, Parsippany | Partner | | | |
| Morris Imaging Assoc | Partner | | | |

Bess Witlin

## SCHEDULE B

I. Assets

    A. Raymond James Portfolio
       Value as of March 28, 2013                  $1,310,169.82

    Consisting of the following:

| | | |
|---|---|---|
| 1. | John Hancock Annuity | $131,396.34 |
| 2. | IRA | $500,771.87 |
| 3. | SEP-IRA | $124,089.74 |
| 4. | Brokerage Account | $553,938.87 |

    B. Bank of America Checking/Savings        $23,903.60

    C. Chase Bank Checking                       $2,408.73

    D. 2011 BMW                                     $30,000.00

    E. Miscellaneous Household Furniture        Unknown
       and Furnishings

    F. Artwork and Jewelry                       Unknown

II. Liabilities                                            $0.00

710495.1